Good morning ladies and gentlemen. Our first case of the morning is case number 120236 Lynn Beggs v. Board of Education of Murphysboro Community Unit School District No. 186. Are you ready to proceed? Are we ready? Good morning and may it please the court. Would you identify yourself for the record? I'd be happy to. My name is Ian Cooper on behalf of the Board of Education of Murphysboro Community Unit School District. Thank you. The Illinois school code explicitly authorizes a local school district and the board of that school district to, quote, dismiss any teacher whenever, in its opinion, the interests of the school requires it. The school code, which is the statute that we will direct our attention to this morning, makes it absolutely clear that the power to dismiss a teacher, any teacher, whenever, in its opinion, the interests of the school requires it, that power is vested in the board of education of the school district. In July of 2013, the board of education issued its unanimous decision dismissing Ms. Beggs for cause. And in so doing, the board wrote as follows, quote, we as a duly elected board of education have considered Ms. Beggs' conduct and the effect of her conduct on the students of this district, particularly a loss of instructional time to students. We conclude that the evidence included in the record shows that her conduct was detrimental to the best interests of the students. Therefore, sufficient cause was present to dismiss Ms. Beggs as a teacher in the district, and in our opinion, we believe that the best interests of the school is required. And so, your honors, throughout the long history of this dispute and this litigation, it has been the primary focus of the board of education throughout that the best interests of the students must be carefully guarded and maintained. And in order to do so, it had no alternative but to dismiss Ms. Beggs. And it is the board's heartfelt and earnest desire that this court affirm the board's decision to terminate Ms. Beggs' employment, thereby supporting the students' indeed constitutional right to a quality education. Ms. Beggs, on the other hand, asked that this court overturn the board's unanimous decision as to what was in the best interest of their students, an opinion that they had the statutory right to make, by giving deference to the recommendation of a hearing officer. And remember, the school code throughout Section 2412, which is the statute we're examining today, makes a clear distinction between the decision of the board and a recommendation of a hearing officer. But neither the school code nor common sense allow that deference be given to a hearing officer's recommendation. And really, that is the crux of the issue, the legal issue, at least, that is before the court this morning. The sweeping changes embodied in the 2011 legislative reforms make the board the final agency decision-maker, without question, with regard to Ms. Beggs' employment, not the hearing officer. Only the board's decision is entitled to deference upon judicial review with regard to that ultimate decision. Now, before addressing a few facts that I think are critical to the disposition of this case, I feel compelled to state that a fair reading of the hearing officer's recommendation reveals that he was very much motivated by sympathy for Ms. Beggs' personal life challenges that she faced. I'm sure the court is aware that Ms. Beggs was struggling during a portion of her employment with a very ill mother. Her mother subsequently passed away. None of us in this room can feel anything other than sympathy for Ms. Beggs as she endured those struggles. But focusing on Ms. Beggs' life challenges has unfortunately resulted in a gross distortion of what should be the focus of this case. This case cannot be about Ms. Beggs' life challenges. This case must be about whether or not the board's decision that Ms. Beggs' conduct adversely impacted the students in their district in the first-hour geometry class, whether that decision by the board was arbitrary or capricious. Excuse me, Mr. Cooper? Yes. Does the language in 24-12D9, which pertains to the court on review, shall give consideration to the school board's decision and its supplemental findings of fact weigh the hearing board and the board's decision and supplemental pleadings the same weight, give it the same amount of weight? What does the statute imply? The statute does not say that the court should give them the same weight because the legislature chose the words give consideration to. And at the same time, Your Honor, and it's a terrific question, I think it really goes to the heart of the issue of the standard of judicial review that you're struggling with in this case. Section D9, while saying that the court shall give consideration to the findings of fact and recommendation of the hearing officer as well as the decision of the board, does not use the word deference. And it's read in context, of course, with Section 2416. This is critical because 2416 sets forth the requirement with regard to judicial review that the Illinois Administrative Review Law shall govern the review of cases that are brought before circuit courts and appellate courts. With regard to final agency decisions. And Your Honor, also, I think you need to read D9 in context with all the other references to the decision of the agency versus a recommendation of a hearing officer. And by the way, it bears stating at this point and reminding all of us that I think that there are really two sets of findings of fact. And there is a recommendation and there is a decision. So the hearing officer goes through the process of holding a hearing and makes findings of fact and a recommendation. After which, under the statutory scheme that we're looking at, the board then reviews those findings of fact and that recommendation and makes its own findings of fact. The board's findings of fact and the board's decision are what is the subject of judicial review. The give consideration language or give consideration language to language does not alter fundamentally the administrative and judicial review scheme that is embodied in the statute. And to hold otherwise, Your Honor, would upset the entirety of administrative law with regard to this process. And where would we be? It's clear that the sweeping legislative reforms that were enacted in 2011 were intended to do a very profound thing. And that is to return to the local school board the power to make the decision as to whether or not a teacher should be terminated. In essence, those legislative reforms gave life to Section 10-22.4, which I read to you at the outset, that a school board has the power to, quote, Your Honor, I hope I addressed your question. I'd like to turn to several key facts which I think are dispositive of the case before us. We'll begin with March 19th. The record before this course demonstrates that Ms. Beggs engaged in three primary acts of misconduct, any one of which would support the board's decision to dismiss plaintiff for cause. And I begin with March 19th. The Board of Education made the finding of fact that Ms. Beggs failed on that date to teach bell to bell. Now, bell to bell means teaching 8.30 to the end of that period. It's undisputed that there was voluminous testimony and evidence supporting that conclusion. The hearing officer had before him Ms. Beggs' testimony alone, which said she did teach bell to bell. And on the other side of the scale, he also had the testimony of a teaching aide named Carolina Bariano, who testified that she observed in the classroom on March 19th students sleeping, on Saturdays, and on Sundays. She was on cell phones, not engaged, and of critical importance and completely disregarded, it seems to me, or minimized by the hearing officer and by the lower courts, is that Ms. Bariano was so troubled by what she saw on March 19th that she immediately reported this to her superiors. And so what we have is evidence that not only someone who could observe what was going on in the class saw what was happening, but she was so troubled that she was motivated to report this to her superiors. Now, incredibly to me, Your Honors, the hearing officer completely disposed of this issue by saying that Ms. Bariano was unqualified to make a determination as to whether or not students were sleeping or on their cell phones. I'm mystified by that. Credit to a friend. As Bob Dylan would say, you don't need a weatherman to tell you which way the wind is blowing. You don't need to be a teacher to know whether or not someone is sleeping. You don't need to be certified as a math teacher to know that. And certainly the fact that she was so troubled that she complained about it immediately is incredibly powerful proof. But more than that, we also had, the board had before it also, evidence of numerous students who confirmed that Ms. Beggs did not teach bell to bell on March 19th. Now remember, what's going on on March 19th? This is after the notice of remedial warning had been given to Ms. Beggs. The final warning. And that final warning said to her, any additional failure to abide by our requirements, including teaching bell to bell, any such failure to do so would result in dismissal. So to summarize on March 19th, the evidence clearly supported the board's finding of fact that Ms. Beggs failed to teach bell to bell as she was required to do on March 20th, the next day. The board also found that Ms. Beggs failed to report to work on that day by at least 8.15 as she was required to do. Here, the hearing officer actually agreed with that, but concluded, as did the lower court and the court of appeals, that it couldn't be considered by the board because Superintendent Brody, who communicated with her on that day, had excused it. But if you look at the evidence carefully, Your Honors, you'll find that in fact there's no testimony or evidence that Superintendent Brody excused the fact that Ms. Beggs threatened on that morning to call in sick if Mr. Brody did not excuse the fact that she would arrive after 8.15. And so here's the superintendent of the school. He's faced with this option. Either I let her come in after 8.15 and teach, or a class that is already behind other geometry classes has no teacher, no lesson plan, and it's another lost day for these students. So while he said, come on in and teach, because he had no alternative, because Ms. Beggs said either that or I'm calling in sick and she wasn't sick, he said, come on in, but the board was fully entitled as the decision maker to reject the notion that that excused her misconduct. Mr. Cooper, just another clarification. Did you say that the board made its own findings of fact? Absolutely. In the decision and order, which is part of the record, the key document, it lists findings of fact one after another. Isn't the board required to incorporate the hearing officer's findings of fact? The statute talks about incorporating the hearing officer's findings of fact unless the board, in its opinion, and that's a key phrase that we're looking at here, unless the board, in its opinion, determines that the finding of fact by the hearing officer is against the manifest weight of the other. Then the court wouldn't be able to review the combined findings of facts of the board and the hearing officer then? That's what happened here? It's a separate decision then? The decision and order of the school board is completely a separate document from the findings of fact and recommendation of the hearing officer. And there's no findings of fact incorporated into the board's decision? They actually separately enumerated them, Your Honor, and then where they disagreed with them or supplemented them, they noted very meticulously and carefully in their findings of fact where they did so. But to your point, we have findings of fact which under standard administrative law rules and regulations must be accepted by this court. They're prima facie true and may only be rejected by this court if they're against the manifest weight of the evidence. The agency's findings of fact, not the hearing officer's. So are the hearing officer's findings of fact subject to any kind of review? Well, the only kind of review that, if you want to call it that, that the statute calls for is this give consideration language that is part of D-9 in the amended statute. And so, and let me just say at this point, since I've received a number of questions about this point, give consideration to is actually simply a codification of existing Illinois law. When, upon judicial review, the cases are clear that the reviewing court will look at the entire record, which includes the hearing officer's findings of fact and recommendation, and also the findings of fact of the agency, here the board, and the decision of the agency. So there's really nothing terribly new about that. But, Your Honor, the key is it doesn't, the statute in no way elevates the findings of fact of the hearing officer. To the contrary, the statute specifically permits the board to reject the findings of fact of the hearing officer. And in some material respects, that was done. And so this court and all courts in reviewing the final decision of the agency, the school board, must look at and give deference to the findings of fact of the agency to the extent it includes, incorporates, Your Honor, the findings of the hearing officer or supplements or overturns them as against the manifest weight of the evidence in its opinion, in the board's opinion. And all that is what is reviewed. There is not a separate review and there is no deference given to the hearing officer's findings of fact and recommendation. If the legislature wanted to say the reviewing court shall give deference to, it could have said that and it didn't. Finally, in terms of the last factual piece, I would say it's critical to remember what happened on March 21st and 22nd. And that is that the evidence clearly showed that she, that Ms. Beggs failed to have lesson plans available for the classroom on that day. And in fact, that is also, the hearing officer also found that that happened on that day. And lesson plans are critical because they tell a substitute teacher how to teach that class, how to teach those students. And there is a mountain of evidence that supports that, including contemporaneous notes from Mr. Brody on the 22nd, which established that the substitute teacher came in to him and complained about the fact that he didn't have lesson plans. Because of shortness of time, I obviously will not waive. I incorporate all the arguments that we have set forth in our briefs and do not waive any of them that I haven't had a chance to discuss. But before I sit down, I want to make, if I could, just one last brief point. And that is this, that in a return to the beginning of my discussion with you this morning, and that is that throughout this case, there has been an emphasis on Ms. Beggs' personal struggles. And while you listen to my friend's argument, I ask that we consider amongst ourselves whether or not in this case, sympathy has a proper role, sympathy for the struggles that she endured. Justice is blind. Justice is blind to discrimination. It's blind to bias, and it's blind to sympathy. Justice, above all, seeks to apply the rule of law, and that is what we earnestly ask this Court to do, as difficult as it may be. Thank you, Counsel. May it please the Court, Counsel. My name is Ralph Lowenstein, and I'm here on behalf of the plaintiff, Lynn Beggs. Lynn is a tenured teacher who was employed by the Murfreesboro School District for more than 19 years. On her four most recent evaluations, by four separate evaluators, she received the highest possible rating, that of excellent. But beginning in the 2010-2011 school year, she was faced with a personal crisis, declining health of both of her parents and the need to care for them. Throughout the 2010-2011 school year, she cared for her father on his last illness. He passed away in June of 2011. Shortly thereafter, the health of her mother began to decline, and during the course of that school year, her mother went from home, the hospital, the rehab center, back to home, and through that process on more than one occasion. At every step of the way, she was by her mother's side, providing care for her, and making sure that she received the necessary care. Anybody who has ever been through this themselves can certainly understand how physically and mentally exhausting this is. Now most of us, under these circumstances, particularly of being employed in the same place for as long as she had, and done as good a work as she had, would have a sympathetic employer who would be supportive and sympathetic to her. Unfortunately, Lynn was not so blessed. Understanding full well what she was going through, this Board of Education and this administration was neither sympathetic nor supportive. They issued a notice to remedy, and after a notice to remedy consisting of four school days on which she was actually present, they dismissed her.  That hearing officer sat through four days of testimony, more than a dozen witnesses, reviewed more than 50 exhibits, and made factual findings and conclusions of law. He stated in his recommendation in some length the basis for his factual findings, and concluded that the Board of Education had failed to prove by a preponderance of the evidence that the charges against Ms. Beggs had been proven, and that the existing facts constituted the cause for dismissal. That decision was then referred to the Board of Education, which reversed many of the factual findings, essentially incorporating what the charges had been originally, and reached the same conclusion that it had reached before it ever heard any evidence at all, before the hearing officer heard any evidence, and concluded that it found out to constitute the cause for dismissal. Appeals were subsequently filed to the Circuit Court and subsequently to the Appellate Court, both of which reversed the decision of the Board of Education. Now, this brings us to the question before the Court, and that legal issue is the standard of review that this Court is to apply in Downs State Tenure Teacher for Dismissal cases. And it arises under a statute passed in 2011, known as Public Act 97-8. That statute provided procedures not found anywhere else in Illinois administrative law, provided a standard of review that is different from any other statute in the state of Illinois. Yes, it would have been convenient for all of us if they just said, just go ahead and do what you've been doing, but they didn't do that, and we don't read out words in the statute. Furthermore, they amended the Chicago statute at the very same time, with totally different results, and this is something else that you can't overlook. The legislature used words with a purpose in mind. When they enacted this statute, they clearly understood the options available. Prior to 1975, if a Board of Education wished to dismiss a tenure teacher, they filed charges, acted incidentally as a grand jury, they prosecuted those charges, they sat at the hearing tribunal, they made a decision, and that decision was reviewed by the court. Beginning in 1975 for Downs State teachers, in 1978 for teachers in the Chicago public schools, they created the position of an impartial hearing officer. The hearing officer heard the evidence, made a decision, and his or her decision was then reviewed by the court. In 1995, with respect to the Chicago public schools, they made another amendment. This amendment didn't affect Downs State teachers, but it did affect Chicago. They retained the position of the hearing officer, but the hearing officer heard the evidence, made a recommendation to the general superintendent, the Board of Education made the final determination, and that was reviewed by the court. Understanding full well all of these options available to it, the General Assembly adopted none of them with respect to Downs State teachers in Public Act 97-8. Instead, they created their own new scheme. But they didn't abandon everything in the prior law. The Board of Education still has the burden of proof. They must prove the factual basis for the charges and that the proven facts constitute cause for dismissal. And that burden of proof never shifts throughout the proceedings. They retained the position of the hearing officer and the qualifications and training to qualify for that position. In order to serve as an independent hearing officer, the person must have five years of experience in employer-employee relations and must be a member of an accredited national arbitration association with its own separate rules. They created an additional requirement in order to serve as a hearing officer in this new statute. The hearing officer has to receive specific training by the State Board of Education with regard to teacher dismissal matters. Now we contrast this with the requirements to serve on the Board of Education. They have to win an election. That's it. The training requirements are relegated to four hours involving finance, fiduciary responsibility, education, and labor law. Nothing with respect to dismissal matters. The hearing officer has to be impartial. They may not be a resident of the school district and they may not have a financial or personal interest in the outcome of the case. The appellate court said in the case, this is almost the exact opposite of the Board of Education. They file the charges, they prosecute the case. In this particular instance, two of the board members actually testified as witnesses. Now they would ask you to give them the final keys to the kingdom and allow them, regardless of what's on the record, to make their own determination on facts and cause. The hearing officer also is the one by statute who actually hears the case. Now I know many of the members of this court previously served as trial court judges, so you understand what the awesome responsibilities of that are. The hearing officer, just like a trial court judge, sits across the table from these witnesses and hears not only what they say, but how they say it, and is in the best possible position to make those credibility determinations. In this case, that hearing officer sat through four days of testimony, 1,100 pages of transcripts, more than 50 exhibits. At best, at best, the Board of Education reviews the transcript or sees it through the filtered eyes of its counsel or superintendent. Mr. Lowenstein, does section 24-12-D8 allow the board to overrule the hearing officer's findings of fact and supplement those findings if they find that it's against the manifest way of the evidence? Well, here's where I think that was unfortunately misstated a little bit. Section 24-12-D8 basically says that, well, first of all, it requires the factual findings of the hearing officer to be incorporated in the decision of the board. It's not unless. It's a requirement. Then it goes on to say that if the board believes that they are against the manifest way to the evidence, it can supplement or modify those findings. It uses the terms manifest way to the evidence. That's not a coincidence. When it used those words, and they're not found in the Chicago statute, which was amended at the exact same time. When it used those words, it knew what they meant. It understood they were terms of art, and it knew that this court and every other reviewing court and advocates on both sides of the table doing administrative law would also understand what they meant. The board of education may only overturn the factual findings of the hearing officer if they are against the manifest way to the evidence. The statute then goes on to say that if the matter is reviewed by the courts, the courts must give consideration to both the factual findings of the hearing officer and his recommendation, as well as the factual findings of the board of education, which have to incorporate the hearing officer's factual findings and its decision in making its ultimate decision. In this case, the board exercised the right, if indeed you're indicating or not contesting it is a right, by making ten supplemental findings in fact and modifying two of the officer's, officer Crystal's findings. So my question is, are you saying that they were in error, that it wasn't against the manifest way to the evidence, because they certainly made supplemental findings and modifications, or are you saying that they did not indicate it was against the manifest way to the evidence? No, they had the right to make supplemental or modified findings of fact under one circumstance, if that was against the manifest way to the evidence. And when this case goes forward to the reviewing courts, for reasons that I'll get to in just a moment, the reviewing court uses the factual findings of the hearing officer throughout these proceedings to determine whether in fact they are against the manifest way to the evidence. And I'll come back to that point in just a moment, although if you want me to, I can address it now. Whatever your preference is. The consideration language is also not accidental. It is a clear modification of what we understand to be the normal process for administrative procedures. It doesn't appear in the Chicago statute that it was amended at the exact same time. Once again, not coincidental. We can't read these words out of the statute just because they're inconvenient for one side of this argument. It has meaning. So how does this whole thing apply to the standard of review? Well, coming back to what I said just a moment ago, it's the hearing officer. The reason for that goes back to something I said earlier. The Board of Education is the one that has the burden of proof. The hearing officer is the one that is impartial. And the hearing officer is the one who actually conducts this hearing and is in the best possible position  to make the right determinations. It's so important. Those factual findings, which the hearing officer made in this case, and once again, I go through them in my brief. I don't have time to do it today. I didn't mean to. No, I was just thinking about this. We have findings of fact by the hearing officer. We have modifications of those facts by the board and their own supplemental facts. The final decision on administrative review is really the board's final decision. So what do we do with that as far as the standard? Are you saying we are, if the board has a right, which I don't think you can test, to modify and to supplement, which they did, we're not to take into account those facts when they have the final decision on administrative review? We're supposed to go back only to the hearing officer's facts, which have been supplemented and modified? Sure you're required to consider those facts, but you're to view them through the prism of whether or not their factual modifications or supplement are in fact against the manifest weight of the evidence. Because the legislature used those words advisedly. And when it comes before this court, you have to look at both the factual findings of the hearing officer and the board of education. But what you actually end up reviewing against this manifest weight of the evidence standard is the factual findings of the hearing officer. One of the things that the hearing officer relied upon was that the teacher in question came in and took 15 to 20 minutes to review the sub's notes, and that's why class started late, right? Is it your contention that it isn't against the manifest weight of the evidence for the board to consider that 15 to 20 minutes might be an ordinate amount of time to review notes? No, no. What I'm saying is this factual findings that this is what happened are against the manifest weight of the evidence. And if you only read one part of this entire record, read the testimony of Matt Moorfield, their witness. So what happened on that occasion was, and this part is not particularly contested, class starts out with the Pledge of Allegiance. It's followed by announcements. That takes about five to eight minutes. After that, she does reteaching. The aide says that she didn't start class for 10 to 15 minutes into the class, on one single class. The hearing officer concluded that she did properly use this time because of the requirements of taking attendance, reteaching, et cetera, et cetera. So that's where the difference becomes. What do we do with, in fact it was mentioned by opposing counsel, what do we do with the fact that the hearing officer indicated that the aide shouldn't be able to testify that there wasn't teaching going on in the classroom? Are we to take that at face value, or is that a fact which can be discounted by the board in indicating you don't need a teacher's certificate to decide whether... The part that they would like to gloss over is this. She didn't understand what it meant to reteach. Part of that time that she's referring to as not starting class was reteaching. Part of that 10 to 15 minutes was taking attendance, Pledge of Allegiance, doing attendance, listening to announcements. That part's in the record. It's unrefuted. So that's where the difference comes. It's not strictly because she couldn't observe if some kid was on a cell phone. That's the difference. I want to make one final point, and that has to do with how you apply the facts to the law of cause. I would say that substantial deference or at least equal weight has to be given to the recommendation of the hearing officer on this point. The reasons are as follows. He's the one who is actually trained to apply the law of cause to the proven facts. He is the one that is impartial. He is the one that is in the best possible position to make those difficult conclusions. Not the Board of Education, and particularly in this case where it is well reasoned and detailed as to how he reached these conclusions.  Matt Moorfield. Is that the name of a witness you said that you thought was critical? Matt Moorfield. It appears in the supplemental appendix that I have attached as part of this record. And he speaks not only to this issue, but he also speaks even more importantly to the issue of what happened on the first day that she was absent because her mother was in critical health and the issue of the providing of the lesson points. Is it your position that prior to the Board supplementing the findings of fact of the hearing officer that the Board has to find that the hearing officer's conclusion was against the manifest with the evidence of why or not? Matt Moorfield. The law clearly states that it may only modify and supplement the factual findings of the hearing officer if they are against the manifest weight of the evidence. The proven facts, as this court well knows, are then applied to determine whether those proven facts constitute the cause for dismissal. You can't do this just in a vacuum. Otherwise there is no purpose in having a hearing. You merely go back to the system well, you don't even go back to the system prior to 1975. You just have a decision made by the Board of Education. We're going to dismiss this teacher for whatever reason we don't need it here. And that's clearly not what the legislature did. Thank you. Thank you. Starting with the Chief Justice's question, Your Honor, it's absolutely clear under 2412 that the Board has the power to incorporate the findings of fact of the hearing officer or, quote, in its opinion, quote, determine that those findings of fact are against the manifest weight of the evidence. And that language, in its opinion, has meaning. Because it doesn't say, for instance, if the hearing officer's findings of fact are against the manifest weight of evidence, which would invite judicial review of the hearing officer's findings of fact. It says that if the Board has the opinion that the hearing officer's findings of fact are against the manifest weight of the evidence, it has the right, the authority, the power to supplement them or find them to be against the manifest weight of the evidence and so indicate. So there's no judicial review of the Board's finding. So if the Board says, we've looked at the facts that were presented to us and we believe they're against the manifest weight of the evidence, and then later the case is appealed to the court, the court can't go back and look at the Board's decision and decide whether or not the Board was correct in making that decision. Well, you certainly can look at the decision to determine whether or not it complied with the statute and the Board formed the opinion that the hearing officer's finding was against the manifest weight of the evidence. And I'm glad you asked that question because I received a question earlier about, are there separate findings of fact of the Board? And that's at pages 5 through 15. There are 70 separate paragraphs of findings of fact of the Board. And to your point, Justice Thomas, the Board explicitly detailed where it determined that a supplemental fact was relevant or a finding of fact by the hearing officer was against the manifest weight of the evidence. I mean, there's absolutely no question that the Board complied with its statutory obligations in this regard. And so to your question... The appellate court never addressed the in-its-opinion language, did it? Did it, did not. And furthermore, Your Honor, I have to say respectfully that the appellate court, I really think, got off the rails with regard to giving deference to, to reading in deference to the findings of fact and a recommendation of a hearing officer. That's completely at odds with 2412 and particularly with regard to the way that the statute incorporates in 2416 the Illinois Administrative Review Law. So ultimately it comes down to this, doesn't it? Was the decision of the appellate court to give deference to the findings of fact? And just think for a minute about the number of warnings that Ms. Beggs was given about her condom. And we detail those in the brief. Very briefly, she was first warned about all of her times of failing to appear at work on time. And in a meeting that occurred in spring of 2011, and after that first warning, she was late three times in September, two times, I'm sorry, three times in October of 2011, three times in November, two times in December, three times in January 2012. So concerned was the district that they issued a written letter of concern on January 30th and said you must address these concerns immediately. And after that, the very next day on the second, first of February, she was late again. Some dispute, this is in the hearing officer's findings. And then warning number three, on February 2nd, a letter from Superintendent Brody. It said you must comply with our guidelines. And by the way, I haven't said this yet, but this really has to be, I think, remembered as to why it was neither arbitrary nor capricious of the board to discharge Ms. Beggs. They offered her and gave her leave to deal with her crisis at every turn. For my friend to suggest that the Board of Education was unsympathetic, well, it's really unfair. They gave her leave. In fact, a board member at a board meeting said take time off to get yourself together. It was Ms. Beggs who said I want to come back now. I'm ready to come back now. And came back on March 19th. It was Ms. Beggs who made that decision, not the district. And then the fourth warning that she was given was this notice of remedial warning. And one of the reasons for that is that in the face of a notice of remedial warning, the hearing officer suggested in his recommendation that she should be given a last chance agreement. And she had been given that. She had been given a notice of remedial warning that said this is your last chance. And yet, on the day she returned, as you know, Justice Thomas, you mentioned, she returned and her classroom was in disarray to the extent that the teacher aide, who was perfectly competent to determine whether or not kids were on their cell phones or falling asleep, was so disturbed by it she went and immediately complained about it. And it didn't end there. On the next day she was late and threatened the superintendent that she would call in sick. And it didn't end there. The next few days she didn't have lesson plans available. There's nothing arbitrary or capricious about what occurred in this case. It was compassionate at every turn for her. They were aware that she was struggling and they said take leave. Take all the leave you need. She chose to return and she could not live up to the reasonable expectations. I want to ask a question. I think to follow up on Justice Tice's question of what we review. The statute says if the school board's decision to dismiss for cause contrary to the hearing officer, we on review, give consideration to both the findings of fact, supplemental findings and modifications, and the hearing officer's findings of fact. You stress that if the board finds in its opinion that the hearing officer's findings are against the manifest way to the evidence, do we review the hearing officer's findings as to whether they're against the manifest way or do we review the opinion whether the school board had a legitimate reason for its opinion that the modifications and supplemental findings are correct? My suggestion is that the court need only go so far as to determine whether or not the school board exercised its judgment and formed an opinion that the hearing officer's finding was against the manifest way to the evidence. And we do that, in doing that, we give consideration to the hearing officer. Precisely. And what you do is you read appendix 16 through the end of the decision in order, which is the most thoroughly prepared and carefully and meticulously written document by a school board I've ever seen. I mean, it goes through line by line, Justice Cartmire, exactly what the reasons are for its decision, exactly what the reasons are for any findings contrary to. I mean, the perfect example of this, again, is to return to the where the school board simply could not agree with the hearing officer's sense that you have to be a certified teacher to know whether a student is sleeping or a student is on a cell phone. And so, of course, that plus a mountain of other evidence supported the finding of the district, of the board, that she had violated the notice of remedial warning that she was given in numerous ways, in numerous instances, and that, therefore, unfortunately, she had to be discharged for cause. So, when the board in this case made its decision to dismiss Ms. Beggs for cause, the board had before it the testimony of a certified teacher who was concerned, so concerned about Ms. Beggs' conduct that she immediately reported students sleeping and on cell phones. The board had before it information that numerous students confirmed those concerns about what happened on Monday, March 19th, many saying that the class didn't get started until much after the bell had rung. We know for a fact that Ms. Beggs' first hour geometry class was well behind other classes. We know for a fact that on the morning of the 20th, Ms. Beggs threatened to call in sick. Your Honor, thank you very much. I appreciate the attention of the court. Thank you. Case number 120236, Lynn Beggs versus the Board of Education of Murfreesboro Community School District number 186 will be taken under advisement as agenda number 16. Mr. Cooper, Mr. Olinstein, we thank you for your arguments this morning. You're excused at this time.